IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DAVID LARSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-cv-00620-RK |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION; | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff David Larson's appeal brought under 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge. After careful consideration and review, and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

### Background

Plaintiff filed an application under Title II of the Social Security Disability Act for disability and disability insurance benefits alleging an on-set of disability of December 7, 2018. (Tr. at 15.) After Plaintiff's application was denied at both the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ continued the hearing to request a medical interrogatory. (Tr. at 47-49.) Dr. Elizabeth C. Smith, DO, MPH, accordingly submitted the requested medical statement and interrogatory. (Tr. at 429-38.) Following a full hearing, (Tr. at 27-40), the ALJ issued an unfavorable decision finding Plaintiff not disabled for purposes of receiving social security benefits, (Tr. at 15-26). The Appeals Council then denied Plaintiff's request for review, (Tr. at 6-11), making the ALJ's decision the final decision of the Commissioner. Plaintiff accordingly seeks judicial review of the ALJ's unfavorable decision denying his application to receive social security benefits.

### Discussion

The Court's review of the ALJ's social security decision denying Plaintiff's application for social security disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole."

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)).  Put another way, "we will affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole."  *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted).  An ALJ's "failure to comply with SSA regulations . . . is [reversible] legal error."  *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020).  Here, Plaintiff argues that the ALJ "erred as a matter of law by failing to provide an adequate analysis of supportability and consistency" of Dr. Smith's medical opinion, as required by SSA regulations, specifically 20 C.F.R. § 404.1520c.  (Doc. 11 at 8.)

I. **The ALJ's Decision**

At Step Four of the familiar five-step SSA disability benefits analysis framework,[1] the ALJ considered Plaintiff's residual functional capacity ("RFC"), which is the "most [he] can do" despite any "physical and mental limitations that affect what [he] can do in a work setting" caused primarily by his COPD.  20 C.F.R. § 404.1545(a)(1).  The ALJ considered Plaintiff's allegation of breathing difficulties but found that his consistent earnings history and the objective medical record did not support Plaintiff's alleged inability to work.  (Tr. at 19.)

The ALJ noted that Plaintiff's COPD "is stable and controlled" and that his "medical record is sparse" and does not include any hospitalizations or ER treatment and reflects only "intermittent and unremarkable" follow-up appointments with a Pulmonary Clinic.  (*Id.*)  The ALJ noted that he did not present to the Pulmonary Clinic for more than one year and only did so after he had almost exhausted his medications and was "feeling poorly due to having to ration them out."  (*Id.*)  Additionally, the ALJ noted that Plaintiff reported doing a "wide range of daily activities," including that he was able to be fairly active around the house where he lives with his wife, daughter, and two young grandchildren, and that he "prepares meals, drives, shops in stores for groceries, and takes his grandchildren to and from school daily."  (*Id.*)  Moreover, the ALJ found that Plaintiff only rarely used his nebulizer—although he does use albuterol by inhaler on a daily basis—and that while he takes Symbicort as directed, he "misses Spiriva about half the time and

---

[1] *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At Steps One, Two, and Three of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (Step One); did have a severe impairment (chronic obstructive pulmonary disease or COPD) and non-severe impairments (hyperlipidemia and pulmonary nodules) (Step Two); but that neither the severe nor non-severe impairments individually or collectively met or medically equaled a Listed Impairment (Step Three).  (Tr. at 17-18.)

sometimes he is only using albuterol rarely." (*Id.*) The ALJ also noted that Plaintiff "continues to smoke daily." (*Id.*)

The ALJ found that Plaintiff generally manages his symptoms at home and that when he does seek acute treatment of Prednisone and Z-pak after doing strenuous activity outside for several days, Plaintiff is able to return "to baseline without need for hospitalization." (*Id.*) The ALJ noted that "[r]espiratory findings are routinely normal and do not reflect significant abnormalities," and that although his records include findings of diminished breath sounds, his "oxygen levels are within fair range and respiration unlabored." (*Id.*)

The ALJ concluded:

> After review of the entire record . . . claimant is able to perform a range of medium work, with additional postural and environmental limitations. The ability to perform such range of work is supported by the record showing the stable and controlled nature of the claimant's COPD, intermittent exacerbations well-treated and responsive to medication, largely unremarkable objective findings, and the claimant's ability for a wide range of daily activity including some childcare tasks, food prep, shopping, and driving.

(*Id.* at 20.)

In formulating Plaintiff's RFC, the ALJ considered the various medical opinions in the administrative record concerning Plaintiff's work-related functional abilities or limitations. In this regard, the ALJ found the prior administrative findings of the state agency medical consultant to be persuasive because "they are supported by the evidence and are consistent with the record," including that "claimant can perform a wide range of medium work," referencing the same reasons given above. (*Id.*) The state agency medical consultant opinion found (1) that Plaintiff could occasionally lift and/or carry 50 pounds and could frequently lift and/or carry 25 pounds; (2) that Plaintiff could stand and/or walk and sit (with normal breaks) for 6 hours in an 8-hour workday; (3) that Plaintiff could occasionally climb ramps/stairs or ladders/ropes/scaffolds and frequently kneel, crouch, or crawl; and (4) that Plaintiff should avoid concentrated exposure to extreme hot or cold, wetness, humidity, or fumes, odors, dusts, gases, poor ventilation, etc., and "pulmonary irritants." (Tr. at 56-57.)

As to the medical opinion and interrogatory provided by Dr. Smith, however, the ALJ found this opinion to be "unpersuasive." (*Id.*) Dr. Smith submitted her opinion regarding Plaintiff's limitations to do work-related activities based on Plaintiff's "documented COPD with moderate obstruction . . . with history of exacerbations with strenuous exertion," as reflected in Plaintiff's

3

medical records. (*See* Tr. at 429-34.) Dr. Smith opined that Plaintiff could occasionally lift or carry 21-50 pounds and could never lift more than 50 pounds; could stand for approximately 3 hours in an 8-hour workday; could walk for 1 hour at a time without interruption and for a total of 2 hours in an 8-hour workday; was limited in various postural activities (i.e. could occasionally climb stairs, ramps, ladders, or scaffolds and stoop and kneel, and could never crouch or crawl); and would have similar environmental limitations consistent with the state agency medical consultant's opinion.

In response to the ALJ's medical interrogatory, Dr. Smith explained that she based her opinion on Plaintiff's "[d]ocumented history of primary care visits . . . due to dyspnea and wheezing in the setting of COPD exacerbations" and his "[d]ocumented diagnosis of COPD with moderate obstruction." (Tr. at 436.) Dr. Smith recognized that Plaintiff's medical records did not reflect any "recurrent hospitalizations" or "hospital referral due to severe exacerbations requiring inpatient treatment," along with Plaintiff's documented "smoking history with cessation counseling" and that Plaintiff's then-recent medical records "report[] stability in disease and stable home activity." (Tr. at 436 (internal record citations omitted).)

In evaluating Dr. Smith's opinion, the ALJ explained that it was unpersuasive because:

> [w]hile the opinion is supported by some discussion about COPD in general, the opinion, such as that regarding reduced ability for walking and standing, is unsupported by objective exam findings or testing. Moreover, the opinion is inconsistent with the record as a whole reflecting minimal and intermittent need for follow-up on COPD, conservative and stable treatment, and ability for activities like shopping for groceries, food prep, and household tasks including activities related to the grandchildren.

(Tr. at 20.)

The ALJ ultimately determined that Plaintiff could perform "medium work as defined in 20 C.F.R. [§] 404.1567(c),"[2] except that he (1) "can occasionally climb ramps, stairs, ladders, ropes, and scaffolds," (2) "frequently balance, stoop, kneel, crouch, and crawl," and (3) "must

---

[2] This regulation defines "medium work" as "involve[ing] no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." § 404.1567(c). Moreover, "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds," and involves intermittent sitting "during the remaining time." SSR 83-10, 1983 WL 31251 (SSA Jan. 1, 1983); *see Fluke v. O'Malley*, No. 4:23-cv-00259-DGK, 2024 WL 943458, at *3 (W.D. Mo. Mar. 5, 2024) (recognizing that "SSR 83-10 addresses the maximum standing and walking requirements for each exertional level").

4

avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation." (Tr. at 18.) Although the ALJ determined that, based on the RFC finding, Plaintiff could not perform past work as a janitor or landscape laborer, (Tr. at 20-21), in light of Plaintiff's RFC, age, education, and work experience, he could perform work as lamination assembler, binding printer, and counter supply worker, for which significant numbers of jobs exist in the national economy. (Tr. at 21-22.) Accordingly, the ALJ denied Plaintiff's application for disability benefits under the SSA.

## II. Did the ALJ Consider Supportability and Consistency?

In this appeal, Plaintiff argues that the ALJ "erred as a matter of law by failing to provide an adequate analysis of supportability and consistency . . . in violation of 20 C.F.R. § 404.1520c." (Doc. 11 at 8; *see* Doc. 13 at 2.)

Title 20 C.F.R. § 404.1520c sets out the procedures and establishes a framework for the analysis of medical opinions by an ALJ in determining whether an applicant is entitled to social security disability benefits. Section 404.1520c(a) establishes that (unlike the prior framework which applies to claims filed before March 27, 2017),[3] the ALJ "will not defer or give any specific evidentiary weight . . . to any medical opinion[] or prior administrative finding[]." Instead, the ALJ will evaluate the persuasiveness of each medical opinion or prior administrative finding by considering five factors—(1) supportability, (2) consistency, (3) relationship with the claimant (including length and extent of the treatment relationship, frequency of examinations, and purpose of the treatment relationship), (4) specialization of the provider, and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c).

Section 404.1520c(a) specifies that supportability and consistency are "[t]he most important factors" to the ALJ's persuasiveness determination for medical opinions. Subsection (b) sets out the ALJ's duty and responsibility to "articulate . . . how persuasive [he or she] find[s] all of the medical opinions," and directs the ALJ to "explain how [he or she] considered the supportability and consistency factors." § 404.1520c(b)(2). While the ALJ is required to consider

---

[3] Under the prior administrative framework, an ALJ was required to defer to and to give "controlling weight" to the opinion of a claimant's treating physician absent "good reasons" for doing so. *See Austin v. Kijikazi*, 52 F.4th 723, 730 (8th Cir. 2022) (internal quotation marks omitted) (recognizing that prior caselaw relying on the "treating physician rule" is "legally inapposite" under the revised framework set out at 20 C.F.R. § 404.1520c).

5

supportability and consistency, an ALJ "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." *Id.*

In this context, "'[s]upportability refers to how a medical opinion is supported by relevant objective medical evidence and the medical provider's explanations . . . .'" *Spiers v. Colvin*, No. 5:23-CV-06116-SJ-JAM-SSA, 2024 WL 5245089, at *4 (W.D. Mo. Dec. 30, 2024); *see* § 404.1520c(c)(1) (explaining that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[]. . . , the more persuasive the medical opinion . . . will be"). Consistency, in turn, "measures how the opinion aligns with evidence from other medical and nonmedical sources in the record." *Spiers*, 2024 WL 5245089, at *4; *see* § 404.1520c(c)(2) (explaining that "[t]he more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be").

The Eighth Circuit has held that an ALJ errs as a matter of law if he or she does not consider <u>both</u> supportability and consistency in evaluating the persuasiveness of a medical opinion in denying social security disability benefits. *Bonnett v. Kijakazi*, No. 21-1619, 859 F. App'x 19, 20 (8th Cir. Sept. 20, 2021) (finding that reversal was required because "while the ALJ adequately evaluated the supportability of Dr. Thompson's opinion, she did not address whether his opinion was consistent with the other evidence of record, as required by the applicable regulation") (citing *Lucus*, 960 F.3d at 1069). In *Bonnett*, the Eighth Circuit declined to affirm the ALJ's decision on the basis that "Dr. Thompson's opinion was not consistent with specific other evidence in the record," as the Commissioner argued in that case, because "the ALJ made no such findings." *Id.* (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

Plaintiff argues here that the ALJ failed to consider both supportability and consistency of Dr. Smith's medical opinion. The Court disagrees. As set out above, although the ALJ did not use the terms "supportability" or "consistency," the written decision reflects that the ALJ properly considered both factors. *See Goss v. Kijakazi*, No. 6:22-CV-03302-DGK-SSA, 2023 WL 8452431, at *3 (W.D. Mo. Dec. 6, 2023) (recognizing that these words "are not magic words that the ALJ must use"). In weighing Dr. Smith's medical opinion, the ALJ (1) noted the lack of objective exam findings or testing supporting Dr. Smith's opinion particularly as to the asserted severe limitations for walking and standing (supportability), and (2) noted that Dr. Smith's opinion was inconsistent with the medical record that—as Dr. Smith also recognized herself—reflected only a minimal and

intermittent need for medical care with conservative and stable treatment and with the record of activities of daily living Plaintiff could do (consistency).

As the Eighth Circuit has recognized, "[a]n ALJ can discredit conclusory opinions without supporting objective evidence indicating how the claimant's impairments interfere with the performance of job-related functions." *Bentley v. Kijikazi*, No. 22-2883, 2023 WL 3862562, at *1 (8th Cir. June 7, 2023) (quoting *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)) (holding that the district court properly considered the supportability of a medical opinion where "Dr. Cullom did not explain how the small amount of medical evidence that was offered resulted in the severe limitations that his opinion proffered"). An ALJ's "brevity is not reversible error." *Cropper*, 136 F.4th at 815 (internal quotation marks omitted). "All in all, the ALJ properly considered the supportability [and consistency] of Dr. [Smith]'s opinion." *Bentley*, 2023 WL 3862562, at *1. And where, as here, the ALJ's determination as to each of the persuasiveness factors considered (including supportability and consistency) is "within the 'zone of choice,'" the ALJ's finding will not be disturbed on appeal.[4] *Cropper*, 136 F.4th at 815. In short, this case is not like *Bonnett*, on which Plaintiff relies, where the ALJ failed to consider both factors; rather, the ALJ's decision reflects proper consideration of both the supportability and consistency of Dr. Smith's medical opinion as to Plaintiff's asserted work-related limitations due to his COPD.

---

[4] Plaintiff argues that "[c]ontrary to the ALJ's conclusion, . . . Dr. Smith's opinion is *supported by* her review of all the available medical records and that her conclusions are based upon the objective exam findings and testing available in the record." (Doc. 11 at 12.) In *Cropper*, the Eighth Circuit noted that judicial review under the revised regulations only goes to "whether the ALJ adequately analyzed persuasiveness, including the supportability and consistency factors, not whether we agree with the ALJ's evaluation of the record evidence on those issues." 136 F.4th at 814 (citing *Austin*, 52 F.4th at 728-30; *Bowers v. Kijikazi*, 40 F.4th 872, 875 (8th Cir. 2022)). The Court declines Plaintiff's invitation to re-weigh or reconsider the ALJ's findings as to the supportability or consistency of Dr. Smith's opinion. *See id.* at 815 ("an ALJ's decision is not outside the zone of choice simply because this Court might have reached a different conclusion had we been the initial finder of fact," and put another way, the Court "will not disturb an ALJ's decision merely because there is evidence supporting two inconsistent conclusions") (internal quotation marks omitted).

In his reply brief, Plaintiff maintains that he argues in this appeal only that "the ALJ failed to properly evaluate *supportability* and *consistency*." (Doc. 13 at 2 (underline emphasis added).) Accordingly, the Court does not understand Plaintiff to raise any substantial evidence challenge to the ALJ's ultimate finding of Dr. Smith's opinion as unpersuasive and, more importantly, the ALJ's RFC determination. *See also Cropper*, 136 F.4th at 815 (recognizing that an ALJ's supportability and consistency evaluation "is simply part of determining whether the ALJ's ultimate persuasiveness and [RFC] findings are supported by substantial evidence—issues Cropper does not even raise on appeal"). Even if he did properly raise this issue, however, for the reasons explained in the Commissioner's brief, (Doc. 12 at 6-9), the Court would find that substantial evidence supports the ALJ's decision in this regard.

## Conclusion

Therefore, after careful consideration and review, and for the reasons explained above, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: February 11, 2026